# W. D. WADE, Respondent, v. GAYLORD DOUGLAS, Appellant.

### Springfield Court of Appeals, February 5, 1912.

1. **LOAN AGENTS: Commissions: Sufficiency of Evidence.** In an action against a loan agent for balance due the plaintiff on commission for services in making loans for the defendant, plaintiff claimed that under his agreement with the defendant he was entitled to receive an amount equal to one per cent on each loan for the entire period of the loan. Defendant contended that plaintiff was to receive only one-half of one per cent, the other half to be paid to plaintiff's wife. The evidence is examined and *held* sufficient to authorize the finding in favor of the plaintiff.

2. **WITNESSES: Husband and Wife: Rendering Competent Testimony of Other Party's Wife.** The testimony of the wife of one of the parties to a suit may be rendered competent by the fact that the other party took her deposition.

3. **PLEADING: Alternative Pleading.** In an action to recover for services in making loans, it appeared that the defendant was agent for Wells & Adams, mortgage brokers, and that plaintiff had been employed by defendant to make loans. The petition alleged that Wells & Adams had not paid plaintiff, but had sent the money and commission notes to the defendant, who had appropriated the same to his own use. It further alleged that "the defendant under the contract of employment was to pay plaintiff compensation aforesaid, or Wells & Adams were to pay him, that he does not know whether the defendant or the said Wells & Adams were to pay him, but believes that Wells & Adams were to pay him, as aforesaid, and that defendant had converted and embezzled the said money and notes sent to the defendant by Wells & Adams." *Held*, that the petition failed to precisely conform to the statutory requirements as to alternative pleadings, yet, giving it a liberal construction it is sufficient to uphold a judgment against defendant on the theory that plaintiff was employed by defendant to make loans, that he had rendered the service and was entitled to his compensation from defendant under such contract.

4. ———: ———: **Submitting Both Theories: Inconsistent Pleading: Saving Objections: Practice.** Two counts, if inconsistent, cannot be pleaded in the alternative, if timely objection is made thereto; but under section 1828, Revised Statutes 1909, a cause of action may be stated in separate counts under two theories, in which case plaintiff would be entitled to have both theories presented to the jury.

5. ————: **Inconsistent Pleading: Improperly Uniting Causes: Saving Objections: Practice** Where it is claimed several causes of action have been improperly united, the appellant is in no position to take advantage of such error where he made no objection in the lower court by demurrer or answer or motion to elect.

6. **JUDGMENT: Money Judgment: Failure to Deliver Notes: Recovering Prima Facie Value of Notes.** In an action for amount due plaintiff for making loans, it appeared that under the contract with defendant, plaintiff was to receive an amount equivalent to one per cent of the loan for the entire period thereof and where this was not paid in cash by the borrower plaintiff was to receive commission notes for the amount. Plaintiff alleged and proved that he demanded such notes and the defendant refused to settle with him in notes, according to the terms of the contract. *Held,* that plaintiff was entitled to recover a money judgment for the value of such notes which prima facie would be their face value, and that appellant could not complain that plaintiff recovered a cash judgment, where under his contract he was only entitled to notes.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* Judge.

Affirmed.

*Mann, Johnson & Todd* and *Henry D. Green* for appellant.

(1) Plaintiff cannot sue upon one cause of action and recover upon another. The finding of facts and the undisputed evidence are outside the issue taken by the petition, and so is the judgment, and it is therefore erroneous. Schweider v. Patton, 175 Mo. 684; Laclede Gas Co. v. Iron Works, 169 Mo. 137; Cole v. Armour, 154 Mo. 351; Neals v. Ford, 167 Mo. 495; Tegeler v. Mitchell, 60 Mo. App. 377; Nichols v. Stevens, 123 Mo. 117; Newham v. Kenton, 79 Mo. 382; Irvin v. Childs, 28 Mo. 576; Sundmacher v. Lloyd, 114 Mo. App. 317; Johnson-Brinkman Co. v. Bank, 116 Mo. App. 558; Clements v. Yates, 69 Mo. 623; Sandeen v. Railroad, 79 Mo. 278; Finely v. Bryson, 84 Mo. 664. (2) Nor can he sue for tort and recover for breach

of contract. Jones v. Loomis, 19 Mo. App. 234; Horine v. Bone, 69 Mo. App. 481. (3) He cannot even join an action in tort with one on contract in the same petition. Barnes v. Railroad, 119 Mo. 303. (4) Plaintiff was not entitled to a money judgment for the coupon notes due him. His remedy is an equity to compel their delivery. Houck v. Holliday, 79 Mo. App. 117. (5) Where one is to be paid in something else than money he cannot abandon his contract and sue on *quantum meruit* and thereby convert into cash payment what was according to the agreement to be paid in something else. 9 Cyc. 690.

*Patterson & Patterson* for respondent.

(1) Under the substantive law the notes were presumptively worth what their face called for. O'Donaghue v. Cosby, 22 Mo. 396; Skeen v. Electric Co., 42 Mo. App. 158; 3 Parsons on Contracts (5 Ed.), 196; Menkens v. Menkens, 23 Mo. 254; Bredow v. Savings Institutions, 28 Mo. 182; State to use v. Berning, 74 Mo. 98. (2) A party cannot lie by and trying a case apparently on one theory, spring a vital point and endeavor to introduce an entirely new line of defense for the first time in the appellate court. Nicket v. Railroad, 135 Mo. App. 671; Bowlin v. Creel, 63 Mo. App. 229; Beck v. Wisely, 63 Mo. App. 239; Bray v. Seligman,, 75 Mo. 40; Bielman v. Railroad, 50 Mo. App. 151; Waters v. School District, 59 Mo. App. 580; Better v. Magoon, 85 Mo. 580. (3) A party cannot on appeal or writ of error, complain of an error committed by the trial court, which he himself invited or assisted in propagating. Gregory v. Sitlington, 54 Mo. App. 60; Waller v. Railroad, 59 Mo. App. 410; Harper v. Morse, 114 Mo. 31; Johnson-Brinkman Co. v. Bank, 116 Mo. 558; Drennan v. Dalncourt, 56 Mo. App. 128. (4) A cause must be disposed of on appeal upon the same

theory as that assumed at the trial by the parties.
Williams v. Lobban, 206 Mo. 407; St. Louis v. Wright
& Co., 210 Mo. 502; Mitchell v. United Railways, 125
Mo. App. 11; Farmers & Merchants Bank v. Zook,
133 Mo. App. 603.   (5) The appellant cannot ques-
tion the correctness of the finding of facts in this
court, either on the ground of there being no evidence
to support it, or on the ground that it does not include
all the issues for the reason that he failed to except
to the finding at the time.  Snuffer v. Karr, 197 Mo.
188; Steele v. Johnson, 96 Mo. App. 156; Bailey v.
Emerson, 87 Mo. App. 225; Burress v. Spring, 143
Mo. App. 691; Loewen v. Forsee, 137 Mo. 38; Free-
man v. Hemenway, 75 Mo. App. 617; Leith v. Steam-
boat, 16 Mo. 181.

NIXON, P. J.—This action was commenced by
W. D. Wade against Gaylord Douglas for the value
of his services in placing loans for Wells and Adams,
mortgage brokers of Quincy, Illinois.  A jury was
waived and judgment was rendered for the plaintiff
for $2,276.25, from which the defendant has appealed.

The petition is as follows:  (Formal parts
omitted.)

"Plaintiff for cause of action states that Wells
and Adams, mortgage brokers, located at Quincy, Ill.,
are and were at all the times hereinafter mentioned,
engaged in the business of loaning money on real es-
tate security in the state of Missouri; that they con-
duct their business in the following manner:  Their
loans are generally made for a term of seven years,
and in consideration of the payment of seven per cent
interest annually.  A first deed of trust is given to
secure a note for the amount of the loan, together
with coupon notes representing five per cent of the
interest payable annually for the term of the loan.
A second deed of trust is given to secure coupon

notes for the additional interest of two per cent, payable annually, and drawing eight per cent interest from maturity, but that in all cases where the borrower is willing for Wells and Adams to deduct from the amount of the loan interest at the rate of one per cent for the full term of the loan, said additional interest notes represent one per cent of the amount loaned for the term of the loan.

"Plaintiff further states that one Gaylord Douglas is and was at all the times hereinafter mentioned, the agent of Wells and Adams for the purpose of employing agents to place loans for the said Wells and Adams; that on January —, 1908, he employed plaintiff as an agent to place loans for Wells and Adams upon the following terms: That in cases where the borrower was willing for Wells and Adams to deduct from the amount loaned one per cent interest on the principal sum loaned for the term of the loan, said sum was to be paid to plaintiff immediately in consideration for his services in placing said loan, and that in all other cases where loans were made by plaintiff, coupon interest notes, payable annually, and drawing eight per cent interest from maturity, secured by a second deed of trust on good real estate security, were to be assigned to plaintiff within a reasonable time after placing said loans, and said notes were to be equivalent in value to one per cent interest on the entire amount of money placed by plaintiff for the said Wells and Adams, for the respective terms of the loans.

"Plaintiff further states that the defendant assigned Howell county, Missouri, to him as his territory, and that pursuant to said contract he moved to Howell county, Missouri, and industriously and faithfully engaged in the business of placing loans pursuant to said contract; that plaintiff placed the following loans at the times and upon the terms therein specified, for which he is entitled to cash commissions

in the sum of $512.75: (Here follows list of borrow-
ers, showing amounts of loans, date, and cash com-
missions, all of which we omit.)   That plaintiff placed
the following loans at the times and upon the terms
hereinafter specified, for which he is entitled to notes
secured by a second deed of trust, the amount of which
notes is $2,425.25: (Here follows list of borrowers,
showing amounts of loans, date, and commission notes,
all of which we omit.)

"Plaintiff further states that the said Wells and
Adams have not paid plaintiff but have sent the said
cash commissions amounting to $512.75, and the said
commission notes amounting to $2,425.25 to the de-
fendant, Gaylord Douglas, and that defendant has ap-
propriated said cash and notes to his own use and has
not paid the plaintiff $512.75 and has not delivered
to plaintiff said notes or other notes in lieu thereof,
and that plaintiff has demanded and defendant has
refused to settle with plaintiff.

"Plaintiff further states that defendant under
his contract of employment was to pay him compen-
sation as aforesaid, or Wells and Adams were to pay
him as aforesaid; that he does not know whether de-
fendant or the said Wells and Adams were to pay
him, but believes that Wells and Adams were to pay
him as aforesaid, and that defendant has converted
and embezzled his said money and notes sent to de-
fendant by Wells and Adams as aforesaid:

"Wherefore, in consideration of the premises,
plaintiff prays judgment in the sum of $2,938, and his
costs."

The answer was a general denial and plea of pay-
ment, the defendant claiming that the plaintiff was to
receive but one-half of one per cent and that plaintiff's
wife was to receive the other one-half of one per cent,
and that payment had been made accordingly.

161 App.—23

The evidence at the trial tended to show the following state of facts: That the plaintiff married a niece of the defendant who had been reared in defendant's family. The evidence of plaintiff is that when he was employed, defendant Douglas explained to him that he (Douglas) was in the loan business, working through Wells & Adams, and that his compensation for making the loans was one per cent of the loan for the term of years for which the loan would run; that defendant had a large territory in southern Missouri in which he represented Wells & Adams; that he conducted the business usually by employing soliciting agents with whom he divided his commissions, allowing them one-half of one per cent and taking the other one-half of one per cent for his own compensation, but that in the case of plaintiff, he would allow him the entire commission. The version of defendant, and defendant's wife, who was his agent and bookkeeper, and whose testimony was rendered competent by the fact that plaintiff took her deposition, was to the effect that defendant's compensation for making loans is as above stated; that generally with the soliciting agents whom he had employed he divided this compensation, except in the case of his sons and brother-in-law whom he had allowed to retain the entire commission or all there was in it on account of family connection; that this was explained to plaintiff when the contract was made and he was told that inasmuch as he had married the niece who had been raised in the family and regarded as one of the family, he would be allowed the usual one-half of one per cent and that his wife would be allowed the other one-half of one per cent. The business was done in plaintiff's name, all correspondence and transactions virtually were had with him. Defendant's wife as a witness in his behalf testified in part as follows: "Q. Now when commissions were earned, or in shape to be paid from Wells & Adams on

these loans, who would it come to? A. They would come to Gaylord Douglas. Q. Who would get them? A. I would generally get them. Q. You got his mail? A. Yes, sir. Q. You are his representative here? A. Yes, sir. Q. What would you do with them? A. I would take them and check them over from my books and see whether they were all reported on or not, and then I would send each agent commission notes, or cash commissions to the agents that they belonged to. . . . Q. Now do you know whether any of them were remitted direct to him (plaintiff) from Wells & Adams or not? A. Yes, sir. Q. Do you know what period that covered? A. It covered from November 14, if I remember correctly, 1908, to April, 1909. Q. How much was remitted to him direct from Wells & Adams under that arrangement? A. $1,004.''

At the trial it was admitted by both parties that the only controverted question of fact was as to whether defendant was to pay plaintiff one-half of one per cent, the other one-half of one per cent to be paid to his wife, or whether the entire one per cent commission was to go to the plaintiff. The evidence adduced at the trial on this question was sufficient to authorize the finding of the court against the defendant.

The principal contention of appellant on this appeal is that plaintiff sued on one cause of action and was permitted to recover on another. The settlement of this contention requires an examination of the plaintiff's petition. Such petition, after stating the manner in which Wells & Adams, mortgage brokers, conducted their business in making loans and paying their agents, proceeds in this fashion: ''Plaintiff further states that one Gaylord Douglas is and was at all the times hereinafter mentioned, the agent of Wells & Adams for the purpose of employing agents to place loans for the said Wells & Adams; that on January —, 1908, he employed plaintiff as an agent to place

loans for Wells & Adams . . ." It will be seen
that under these allegations the petition does not un-
equivocally state whether plaintiff was employed by
Wells & Adams through its general agent, the defend-
ant, or whether he employed the plaintiff as his own
agent to place loans for Wells & Adams. The petition
then proceeds to describe the compensation allowed
agents and itemizes the services rendered by the plain-
tiff under his employment and states the compensa-
tion he was entitled to—being an itemized statement
of the persons to whom the loans were made, the
amount of the loans, the date of the loans, and the
cash commissions, making a separate statement of
the cash commissions that he was entitled to. It then
proceeds to state in another table the names of the
borrowers, the amounts of the loans, the dates of the
loans, and the commission notes that the plaintiff was
entitled to, these being separately itemized. The peti-
tion then contains the following statement: "Plain-
tiff further states that Wells & Adams have not paid
plaintiff but have sent the said cash commissions
amounting to $512.75, and the said commission notes
amounting to $2,425.25 to the defendant, Gaylord
Douglas, and that defendant has appropriated said
cash and notes to his own use and has not paid the
plaintiff $512.75 and has not delivered to plaintiff said
notes or other notes in lieu thereof, and that plaintiff
has demanded and defendant has refused to settle with
plaintiff." This paragraph, standing alone, if the pe-
tition had not proceeded any further, in connection
with the previous statement of the petition, would
clearly have shown that the indebtedness for services
sued for was due plaintiff from Wells & Adams and
not from defendant Douglas, and that they (Wells &
Adams) had paid the same in cash and notes to the de-
fendant as plaintiff's earnings and for the use and
benefit of the plaintiff, and that defendant had appro-
priated the cash and refused to deliver the notes. Such

a petition would state a cause of action sounding in tort, and waiving the tort would constitute a cause of action for money had and received, and if the plaintiff had stopped here, would sustain the appellant's contention that the suit was on one cause of action and the recovery on another. But the petition contains the further allegations, immediately following the last part quoted: ''Plaintiff further states that defendant under his contract of employment was to pay him compensation as aforesaid, or Wells & Adams were to pay him as aforesaid; that he does not know whether defendant or the said Wells & Adams were to pay him, but believes that Wells & Adams were to pay him as aforesaid, and that defendant has converted and embezzled his said money and notes sent to defendant by Wells & Adams as aforesaid.'' When the petition is considered as a whole it is seen that it attempts to state either that the employment was by the defendant and that he contracted to pay the plaintiff for his services, or that the employment was by Wells & Adams and they were to pay plaintiff and had paid defendant for the use and benefit of plaintiff, and defendant had converted the cash and notes to his own use.

Under the evidence and special finding of facts by the court the plaintiff recovered on account of a contract with the defendant and not a contract with Wells & Adams.

The petition, as we have stated, attempted to stand on two theories by stating the facts alternatively under Sec. 1828, R. S. 1909. Two counts, if inconsistent, could not be pleaded in the alternative if timely objection had been made. [Behen v. St. Louis T. Co., 186 Mo. 430, 85 S. W. 346.] The law, however, under this section of the statute would allow the same cause of action to be stated in separate counts under two theories in which case plaintiff would be entitled to have both theories presented to the jury.

[Waechter v. Railroad, 113 Mo. App. 270, 88 S. W. 147.] Evidently, under this pleading, the petition was framed on two theories, one that the defendant hired the plaintiff, and the other that Wells & Adams hired the plaintiff; but in either case, if the allegations of the petition were true, defendant would be liable. In such case, one of them might be false and other true, and the pleading would be good if either was true. [Hendricks v. Calloway, 211 Mo. 536, 111 S. W. 60.] In the consideration of plaintiff's petition we are required to give its allegations a liberal construction with a view to substantial justice between the parties, and although it fails to precisely conform to the statutory requirements as to alternative pleading, there is not such departure as to render the judgment fatally defective. If it is to be claimed in this case that several causes of action have been improperly united, the appellant is in no position to take advantage of such error because during the trial he made no objection by demurrer or answer or motion to elect and consequently must be deemed to have waived the same. The plaintiff recovered on one of the alternatives stated in his petition, viz., that he was employed by the defendant Douglas to make the loans, and that he had rendered the services and was entitled to his compensation from defendant under his contract.

It is further objected by the appellant that plaintiff recovered a cash judgment where his own proof showed he was to be paid in cash and commission notes, and that consequently as to the commission in notes he was not entitled to a money judgment. It is sufficient to say in answer to this contention that if part of his services were to be paid for in notes to be delivered to him by the defendant and that he demanded such notes and the defendant refused to settle with him in notes according to the terms of the contract, the plaintiff was then entitled to recover the value of such notes, which, prima facie, would be their

face value. It has been declared of old that a servant is worthy of his hire. The judgment is affirmed. All concur.